## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TENAHA LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 17-1604-GMS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TELULAR CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF OF DEFENDANT TELULAR CORPORATION IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

OF COUNSEL:

Michael J. Femal
James P. Hanrath
MUCH SHELIST, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL  60606
Tel:  (312) 521-2000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Telular Corporation*

Dated:  February 28, 2018
5657225 / 44650

# <u>TABLE OF CONTENTS</u>

**Page**

I.     The Intrinsic Record Establishes Patent Ineligibility..........................................................1

II.    The Determinative Facts Are Not Disputed........................................................................5

III.   The Asserted Claims Broadly Recite A Result By Conventional Means...........................7

    A.     *Alice* Step One: The '869 Patent Claims Are Directed To An Abstract Idea ..........7

    B.     *Alice* Step Two: The '869 Patent Claims Fail To Recite An Inventive Concept.....8

        1.     All Claim Limitation Components and Steps are Well-understood,
            Routine, And Conventional .......................................................................9

        2.     The Claims Fail to Provide an Inventive Concept as an Ordered
            Combination............................................................................................... 9

IV.   Conclusion .......................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ................................................................................. *passim*

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...........................................................................................5

*Automated Tracking Sols., LLC v. Coca-Cola Co.,*
   2017-1494, 2018 WL 935455 (Fed. Cir. Feb. 16, 2018) .......................................6

*Berkheimer v. HP Inc.,*
   2017-1437, 2018 WL 774096 (Fed. Cir. Feb. 8, 2018) ........................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014) .....................................................................9, 10

*Electric Power Grp, LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016) .........................................................................8

*Intellectual Ventures I LLC v. Symantec Corp.,*
   838 F.3d 1307 (Fed. Cir. 2016) ......................................................................8, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
   837 F.3d 1299 (Fed. Cir. 2016) .........................................................................7

*Morse v. Lower Merion School Dist.,*
   132 F.3d 902 (3rd Cir. 1997) ............................................................................5

*RecogniCorp, LLC v. Nintendo Co.,*
   855 F.3d 1322 (Fed. Cir. 2017) .........................................................................9

*In re TLI Commc'ns LLC Patent Litig.,*
   823 F.3d 607 (Fed. Cir. 2016) .................................................................. *passim*

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC,*
   874 F.3d 1329 (Fed. Cir. 2017) ......................................................................4-5

*Ultramercial v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ..........................................................................9

**Statutes & Rules**

35 U.S.C. § 101 ........................................................................................... *passim*

Plaintiff Tenaha's  memorandum of law in opposition to Telular's Fed. R. Civ. P. 12(b)(6) patent ineligibility motion ("Response Brief," D.I. 13) is most conspicuous for what it does not state and what it cannot contest:  the asserted Claims 15 and 18 of U.S. Patent 8,238,869 (the "'869 Patent") are acknowledged by the '869 Patent's specification to employ well-understood, routine, and conventional devices and process in accordance with their normal functions to accomplish the abstract result of notification by sending standard protocol signals within known zones.

Tenaha does not seriously engage Telular's Opening Brief (D.I. 12) on its central point that the asserted Claims of the '869 Patent are directed to the abstract idea of notification using specification acknowledged conventional generic devices and process that negate inventive concept.

Here the ultimate question of patent eligibility is a legal one because Tenaha cannot overcome the admissions in the '869 Patent's specification and articulate *why* there are any disputed facts relevant to resolution of Telular's motion.

## I.        The Intrinsic Record Establishes Patent Ineligibility.

This case should be disposed of at the pleading stage through Rule 12(b)(6) because the Complaint's intrinsic record of the '869 Patent, taken as true, establishes patent ineligibility.

Telular's Opening Brief details the facts supporting its motion to dismiss and establishes these facts are acknowledged in the specification of the '869 Patent.  The intrinsic record – the '869 Patent itself when taken as true – admits the asserted claims, inclusive of their specification defined terms,  use well-understood, routine, and conventional, devices and process for their normal functions to accomplish the abstract result of notification by sending standard signals

within known zones.  Tenaha's Response Brief (D.I. 13) presents no factual challenge thereto and avoids any meaningful discussion thereof.

The Response Brief does not contest that the '869 Patent's specification admits that "wide area alert/notification systems" and "local area alert/notification systems," as well as their zones, were well known before the '869 Patent, that such systems provided both "wide area" and "area specific" notifications wherein both "individual parties" and "the general public" are "addressed with a specific message," and that mechanisms existed "to trigger transmission of an emergency signal over a wide area notification zone" while "local area alert/notification systems typically provide area specific notification."  See, D.I. 12 Ex.1, at 1:14-28; 1:41-44.  The Response Brief has no comment on these core admissions.

Yet, the asserted Claims 15 and 18 herein entirely incorporate such conventional devices and process taught by the '869 Patent's specification as being pre-existing and generic:

Independent Claim 15 states:

15.   A method of providing emergency and non-emergency event notification to a plurality of users, comprising:  using **a low-range transceiver** *to* automatically *relay* within **a wide area notification area** a first emergency notification signal *from* **a wide area notification device**, and to further provide an audible and/or visible alert notification in response to the first emergency notification signal; and manually, and independently from the first emergency notification signal, providing a second non-emergency notification signal to at least one of the plurality of users using the **low-range transceiver**, wherein the non-emergency notification signal is a user-specific and event-specific notification signal that is transmitted by an operator of the **low-range transceiver** to **a wireless transmitter** that is worn by a user, wherein the user is a person other than the operator.

Dependent Claim 18 states:

18.   The method of claim 15 wherein the notification signal has at least one of a text display format, a verbal audible format, a strobe display, a hot/cold spot, and a vibrating function.

The Response Brief does not dispute that the '869 Patent's specification defines the foregoing bold printed claim components as encompassing long known conventional devices. See "**low-range transceiver**" at D.I. 12 Ex.1, 4:36-40; "**transceiver**" at D.I. 12 Ex.1, 4:53-58; "**wide area notification device**" at D.I. 12 Ex.1, 3:49-64; "**wide area notification zone**" at D.I. 12 Ex.1, 4:9-18; "**emergency signal**" at D.I. 12 Ex.1, 4:19-32; and "**wearable transceiver**" at D.I. 12 Ex.1, 4:59-67, 6:22-34.

The '869 Patent's specification acknowledges *known* alert systems include both "wide area alert/notification systems or local area alert/notification systems, and depending on the particular system, individual parties or the general public are addressed with a specific message." D.I. 12 Ex.1, at 1:14-18. *Known* wide area notification systems existed to "alert the general public" "trigger [the] transmission of an emergency signal over a wide area notification zone" and may include "cable and/or radio-controlled operation of sirens, public announcement systems, public bill boards, and/or automated dialers that call a geo-graphically defined group of phone and/or pager subscribers." D.I. 12 Ex.1, at 1:19-28. *Known* "local area alert/notification systems" existed to "typically provide area specific notification." D.I. 12 Ex.1, at 1:41-44.

The '869 Patent's specification notes the term "**transceiver**" "refers to *a device that is configured to receive and transmit radio signals*." D.I. 12 Ex.1, at 4:53-58, emphasis added. The term "**low-range transceiver**" refers "to all transceivers that are configured to operate at a frequency and/or power output such that the service zone of the low range transceiver is smaller than the wide area notification zone." D.I. 12 Ex.1, at 4:36-40. The '869 Patent's specification teaches the "**wide area notification device**" "refers to *all notification devices* that are activated by a command central or activation mechanism from a remote location…, and that provide an audible alert signal (e.g., siren sound, public announcement), a visually perceptible signal (e.g.,

flashing light, displayed text message), or an electronic signal…" D.I. 12 Ex.1, at 3:49-64, emphasis added.  Such signals "include siren sounds, recorded or live verbal messages from a TAR or TV set, displayed messages on a computer screen, TV screen, and/or highway billboard, etc.".  The claim 15 "wireless transmitter that is worn by a user" are "wearable transceivers that are sufficiently small to allow the transceiver to be worn on the body, in a pocket of a garment, or in a handheld purse or small backpack," such as a pager.  D.I. 12 Ex.1, at 4:59-62.

Such generic devices process signals and provide notification in a conventional manner. The asserted claims do not purport to specify a specific way how to relay, send, or transmit first and second signals or achieve notification.  They do not require use of a device-specific protocol, any particular type of signal processing, or any limitation on the manner in which a notification functionality is achieved.

Rather, the specification teaches the claimed recited components and signal processing are pre-existing, conventional, and operable by merely being "configured to" perform their normal functions.  *See*, D.I. 12 Ex.1, at 2:2-26, 2:35-40, 2:53-58, 2:61-66, 3:20-24, 3:41-46, 4:36-40, 4:53-55, 5:1-9, 5:24-30, 5:39-44, 5:66-6:3, 6:13-15, 6:22-26, 6:49-64, 7:12-17, 7:33-50, 8:19-37, and 8:38-53.  The "wide area" and "local area" notification devices, their respective zones, signals, transceivers, transmitters are all taught by the '869 Patent's specification to be generic conventional devices or routine process performing their known capabilities to "automatically relay" a wide area notifications to a smaller area within the original wide area.

The asserted claims are directed to the abstract concept of notification without inventive concept.  "We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic

processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874

F.3d 1329, 1337 (Fed. Cir. 2017)

## II.     The Determinative Facts Are Not Disputed.

Although factual allegations are taken as true for purposes of a Rule 12(b)(6) motion,

legal conclusions are given no deference.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet

that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"

even when "couched as a factual allegation"); *See also*, *Morse v. Lower Merion School Dist.*, 132

F.3d 902, 906 (3rd Cir. 1997).  Yet Tenaha's Complaint (D.I. 1) only offers legal conclusions:

> 12.  The claimed embodiments in the '869 Patent provides new solutions to
> problems related to systems and methods to provide alert notifications to
> members of the general public.
>
> 13.  The '869 Patent solves a problem with the art that is rooted in computer
> technology that uses alert notifications to members of the general public. The
> '869 Patent does not merely recite the performance of some business practice
> known from the pre-Internet world along with the requirement to perform it on
> the Internet. Complaint, D.I. 1 ¶¶ 12, 13.

The Tenaha Response Brief fares no better. It argues (1) the '869 asserted claims are

rooted in computer technology in order to overcome a problem specifically arising in the realm

of notification systems, (2) the claims recite tangible components, and (3) the recited invention

improves an existing technological process. D.I. 13 at page 1. Missing, however, is any

articulation of factual support for the same.  At best, the Response Brief, at pages 8 and 11,

respectively, offers the skeletal statements of:

> As stated in the specification, the '869 Patent is directed to the improvement of
> configuring an alert system to activate low-range transceivers within wide area
> notification zones, to automatically send alerts.  *See* Doc. 1-1 at 5.
>
> But there is nothing generic about providing an automated message from a
> transceiver that is then sent to a wireless transmitter for purposes of emergency
> and non-emergency notification. These elements and others reflect the
> improvement to the functioning of multiple computers and the solution to a
> technological problem.

The Response Brief at page 12 additionally quotes the '869 Patent at 1:41 to 62. This concerns the background of the invention statement that "local area alert/notification systems *typically* provide area specific notification," but "such systems are *typically not used for* alert and notification of the public within the local area, where the notification relates to impending natural disasters and/or large-scale incidents", thus "there is still a need for improved systems and methods to provide alert and notification to members of the general public." (emphasis added). This is hardly a stating of a technical problem in view of its equivocation as to what is typical and its generalization of a continuing need. Nevertheless, the Response Brief cannot explain "how" or "why" the asserted claim language specifically provides an alert notification *solution* other than through use of what the '869 Patent's specification recognizes to be well-understood, routine, and conventional.

In sum, the Response Brief argues legal conclusions within the *Alice* inquiry without supporting facts or analysis "how" or "why" the asserted claim language sustains the same. Such *ipse dixit* assertions are proven false by the numerous undercutting admissions of the '869 Patent's specification.

Still further, although patent eligibility under § 101 is a question of law that may contain underlying issues of fact, *Berkheimer v. HP Inc.*, No. 2017-1437, 2018 WL 774096, at *5 (Fed. Cir. Feb. 8, 2018), no such underlying issues are present here. There are no material facts in dispute. The salient claim terms are defined in the '869 Patent's specification as being well-understood, routine, and conventional and Tenaha does not raise any factual dispute. *See*, *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 2017-1494, 2018 WL 935455, at *5 (Fed. Cir. Feb. 16, 2018) ("The complaint at issue has no allegations, which when accepted as true, would

6

even create a factual issue, and ATS's specification indicates that the components of the claimed invention are conventional.")

### III.  The Asserted Claims Broadly Recite A Result By Conventional Means.

An important consideration in the *Alice* 101 analysis herein is the breath of the asserted claim language and its reliance upon specification taught conventional and generic devices for standard signal processing to accomplish a general result of notification.

#### A.  *Alice* Step One: The '869 Patent Claims Are Directed To An Abstract Idea.

The asserted claims 15 and 18, as a whole, are directed to the longstanding abstract idea of notification by employment of common device components and conventional transmission / reception signal processing.  The Response Brief does not earnestly contest this point.

Here, the claims merely recite using transceivers to process signals to accomplish a *result* of notification via generic devices and routine activity rather than any particular way for achieving it.  *See, e.g., McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims… focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."); *In re TLI Comm'ns LLC*, 823 F.3d 607, 610-611 (Fed. Cir. 2016) (finding claims abstract where "the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea").

The asserted claims use a long known component (a "low-range transceiver") to "automatically relay within a wide area notification area" a "first emergency notification signal" from another long known component (a "wide area notification device" such as a "siren," "TV set," or "computer") while manually allowing for a "second non-emergency notification signal" to be transmitted by an operator of  the known "low-range transceiver" to a further conventional

component of "a wireless transmitter that is worn by a user."  The claimed use of a "low range transceiver" coupled to a "wide area notification device" to process first and second notification signals is nothing more than the proposed use of conventional notification activity applied to a particular, yet known, networking environment.  This recitation does not change its fundamentally abstract nature of providing notification.  *See Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1313 (Fed. Cir. 2016) ("The category of abstract ideas embraces 'fundamental economic practice[s] long prevalent in our system of commerce,' …including "longstanding commercial practice[s]" and "method[s] of organizing human activity.")

The asserted dependent claim 18 merely adds a group of possible formats for "the notification signal" which include acknowledged conventional notifications formats such as pager text or vibration, verbal audible announcements or calls, etc. D.I. 12 Ex.1, at 1:14-44. The additional limitations do not change the fundamental nature of the claims as being directed to the abstract concept of notification.

### B.     *Alice* Step Two: The '869 Patent Claims Fail To Recite An Inventive Concept.

Under the second step of the *Alice* analysis, the claim limitations are examined "more microscopically," *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016), both individually and 'as an ordered combination' to determine whether they contain "additional features" sufficient to "'transform the nature of the claim' into a patent-eligible application."  *Alice*, 134 S. Ct. at 2355, 2357.  "Mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.  Rather, the components must involve more than performance of well-understood, routine, conventional activit[ies] previously known to the industry."  *In re TLI Commc'ns LLC*, 823 F.3d at 613 (citing *Alice*, 134 S. Ct. at 2359 (internal quotations omitted)).

The asserted claims of the '869 Patent fail *Alice* step two because they merely instruct implementing the abstract idea of notification with "routine, conventional activity." *Ultramercial v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014); *Alice*, 134 S. Ct. at 2355; *see also*, *Intellectual Ventures (Symantec)*, 838 F.3d at 1314.

### 1.   All Claim Limitation Components and Steps are Well-understood, Routine, and Conventional.

All individual claim limitations of the asserted claims 15 and 18 are taught by the '869 Patent's specification to recite conventional generic devices or activities routinely performed by prior notification systems.  *See* Sections I. and II, *supra*.

This is insufficient to supply an inventive concept under *Alice* step two. *In re TLI Comm'ns LLC*, 823 F.3d at 612-614 ("[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where those components simply perform their "well-understood, routine, conventional" functions).  *See also*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

### 2.   The Claims Fail to Provide an Inventive Concept as an Ordered Combination.

To save a patent at *Alice* step two, an inventive concept must be evident in the claims. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) Considering the asserted claims "as an ordered combination" yields no synergistic effect.  The claims still are recognized in the '869 specification to employ well-understood, routine, and conventional devices and process in accordance with their normal functions.  *See* Sections I. and II, *supra*.

The '869 specification acknowledges wide area alert/notification systems and local area alert/notification systems were "currently known."  D.I. 12 Ex.1, 1:14-18.  So too for transceivers, even "low-range transceivers."  D.I. 12 Ex.1, at 4:36-58. Still further, such systems

and transceivers accomplished the result wherein "individual parties or the general public are addressed with a specific message."  D.I. 12 Ex.1, 1:14-18.  There is nothing special about the "signal" processing of the asserted claims which relies upon conventional generic transceiver functionality.  Employing the claimed conventional generic devices for their conventional signal processing functionality to provide notification provides nothing more than the "performance of well-understood, routine, conventional activit[ies] previously known to the industry."  *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 134 S. Ct. at 2359).  Whether the claim limitations are viewed individually or as an ordered combination, Claims 15 and 18 do not contain an inventive concept sufficient to confer patent eligibility.

## IV.     Conclusion

For the foregoing reasons, Telular respectfully requests the Court grant its motion to dismiss the Complaint with prejudice for failure to state a claim because the '869 Patent is invalid for failure to meet the subject matter eligibility requirements of 35 U.S.C. § 101.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael J. Femal
James P. Hanrath
MUCH SHELIST, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL  60606
Tel:  (312) 521-2000


Dated:  February 28, 2018
5657225 / 44650

By:   */s/ Bindu A. Palapura*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Telular Corporation*